UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————————

MELODY F.[1],

       Plaintiff,

  v.                                          20-CV-713 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

———————————————————————

## DECISION AND ORDER

Plaintiff Melody F. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act"), seeking review of the decision made by the Commissioner of the Social Security Administration ("Commissioner") finding that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 14. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 16, 17. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

———————————————————

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Supplemental Security Income ("SSI") filed on April 23, 2016.[2]  Tr. 137-49.[3]  Plaintiff's application was initially denied, and she requested a hearing before an administrative law judge ("ALJ").  Tr. 63-70, 134-36.

Following the hearing, in which Plaintiff was represented by counsel, ALJ Timothy Belford issued a decision finding that Plaintiff was not disabled.  Tr. 16-25. Plaintiff's request for Appeals Council Review was denied, after which she commenced this action.  Tr. 1-6; Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive when supported by substantial evidence.  *See Estrella v. Berryhill,* 925 F.3d 90, 95 (2d Cir. 2019).  "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

[2] Plaintiff applied for SSI, which "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue,* 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted).

[3] The filing at Dkt. 12 is the transcript of the proceedings before the Social Security Administration.  All references to Dkt. 12 are hereby denoted "Tr. __."

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).

While the Court does not determine *de novo* whether the claimant is disabled, the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable doubt as to whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (holding that the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

II.   **Disability Determination**

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits

3

the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c).
Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically
equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix
1. 20 C.F.R. § 416.920(c). If such criteria are met, then the claimant is declared
disabled. 20 C.F.R. § 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ
may still find disability under the next two steps of the analysis. The ALJ must
determine the claimant's residual functional capacity ("RFC"). 20 C.F.R.
§ 416.920(e). The RFC is a holistic assessment of the claimant's medical
impairments, both severe and non-severe, that evaluates the claimant's ability to
perform physical or mental work activities on a sustained basis, notwithstanding
limitations for collective impairments. 20 C.F.R. § 416.945.

In the fourth step, the ALJ must determine whether the claimant has the
RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant is
capable of performing past relevant work, then the claimant is not disabled. 20
C.F.R. § 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past
relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R.
§ 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is
able to perform any other relevant work corresponding with her RFC, age,
education, and work experience. 20 C.F.R. § 416.960(c). Here, the burden of proof

shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her application date of May 23, 2016.  Tr. 18.  He also found that Plaintiff suffered from the following severe impairments: polysubstance abuse, attention deficit hyperactive disorder ("ADHD"), major depressive disorder ("MDD"), anxiety, post-traumatic stress disorder ("PTSD"), and a learning disorder.  Tr. 18. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Tr. 18.

Finally, after considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] is limited to simple routine tasks, and no more than occasional work place [*sic*] changes.  She is limited to no more than occasional interaction with co-workers and supervisors and no interaction with the public.

Tr. 20.

The ALJ found that Plaintiff had no past relevant work, and he concluded that Plaintiff was not disabled as defined by the Act because Plaintiff's age,

education, work experience, and RFC allowed her to perform jobs that existed in significant numbers in the national economy. Tr. 23. Therefore, according to the ALJ, Plaintiff was not entitled to SSI following her application date of May 23, 2016. Tr. 24.

## II.   Plaintiff's Argument

Plaintiff makes three arguments for judgment in her favor. Dkt. 14-1. First, she argues that the ALJ failed to consider properly her "Cluster B personality disorder." *Id.* at 16. Second, Plaintiff asserts that the ALJ failed to fulfill his affirmative duty to develop the record by not ordering an intelligence exam. *Id.* at 19. Third, Plaintiff claims that the ALJ's RFC determination was unsupported by substantial evidence because it did not adequately account for her limitations in handling stress. *Id.* at 21. As set forth below, Plaintiff's arguments are without merit.

## III.   Analysis

### A. The ALJ did not err by not specifically considering a "Cluster B personality disorder" at step two of the disability determination.

Plaintiff argues that the ALJ failed to consider her "Cluster B personality disorder" at step two and in subsequent steps of his disability determination. Dkt. 14-1 at 16. Before the ALJ determines severity at step two, a claimant must establish the existence of a medically determinable physical or mental impairment through objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. An ALJ will not consider the claimant's "statement of symptoms, a

diagnosis, or a medical opinion" to establish the existence of a medically determinable impairment. *Id.*

Here, the only piece of evidence suggesting that Plaintiff might have a personality disorder was the opinion of consultative examiner Janine Ippolito, Psy.D.  Tr. 268.  The record otherwise indicated that Plaintiff suffered from bipolar and adjustment disorders. *See* Tr. 253-54, 454, 462, 484-85.  This explains why the ALJ specifically considered Listings 12.04 and 12.15 at step three. *See* Tr. 18-20; *see also* 20 C.F.R. § 404, Subpart P, Appendix A (discussing listings 12.04 and 12.15, which involve "depressive, bipolar[,] and related disorders" and "trauma- and stressor-related disorders," respectively).  A single diagnosis from a consultative examiner was not enough to establish that Plaintiff had a personality disorder. *See* 20 C.F.R. § 416.921; *see also* 20 C.F.R. § 404, Subpart P, Appendix 1 (requiring that the existence of a personality disorder under Listing 12.08 be established through medical documentation of a pervasive pattern of one or more factors).  As such, the ALJ did not err by not considering Plaintiff's "Cluster B personality disorder" at step two of the disability determination.[4]

---

[4] The Court notes that even if the ALJ erred at step two by not considering a personality disorder, that error was harmless because the ALJ found that Plaintiff suffered from multiple severe impairments and continued with the disability determination. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

**B. The ALJ did not fail in his duty to develop the record by not ordering an intelligence exam.**

Plaintiff's next argument is that the ALJ failed in his duty to develop the record by not ordering an intelligence exam. Dkt. 14-1 at 19. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ's duty is not limitless: "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *accord Herman S. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 190, 199 (W.D.N.Y. 2022).

In this case, consultative examiner Dr. Ippolito stated that "[Plaintiff] may benefit from formal cognitive testing to determine *current* level of cognitive ability." Tr. 269 (emphasis added). An intellectual disorder under Listing 12.05, however, "is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22." 20 C.F.R. § 404, Subpart P, Appendix 1. But Plaintiff's school records do not show that she had a low IQ or was intellectually disabled. *See* Tr. 254 (noting that "[Plaintiff's] major concerns educationally are based on her behavior and psychiatric issues[;] [h]er classification should be changed to Emotionally Disabled to better reflect her educational concerns."). The ALJ did not need to order an intelligence exam because a current exam would not have conclusively established that Plaintiff had an intellectual disorder manifesting itself

8

before age twenty-two. *Cf. Tankisi v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 513, 517-18 (W.D.N.Y. 2012) (holding that further development of the record was unnecessary where the state agency consultative examiner noted that the claimant's cognitive functioning was "borderline to deficient"); *aff'd Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013) (summary order). Plaintiff's argument, therefore, fails.

### C. The ALJ's RFC determination adequately accounted for Plaintiff's limitations in handling stress.

Plaintiff's final argument is that the ALJ's RFC determination failed to account adequately for her limitations in handling stress. Dkt. 14-1 at 21. "Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low stress" jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) (quoting SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)). However, an ALJ's RFC determination may adequately account for a claimant's stress even without an explicit stress limitation. *See Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2021).

In crafting Plaintiff's RFC, the ALJ considered two opinions that explicitly addressed Plaintiff's stress. *See* Tr. 20-23. Plaintiff's treating licensed mental health counselor ("LMHC"), Siobhan Scanlon, opined that Plaintiff had "[e]xtreme difficulty in following structured routine[s] due to impairments with stress . . . ."

9

Tr. 615. According to LMHC Scanlon, Plaintiff had an inability to handle speed, precision, complexity, deadlines, working within a schedule, making decisions, exercising independent judgment, working with other people, dealing with the public, dealing with supervisors, being criticized by supervisors, getting to work regularly, and remaining at work for a full day. Tr. 615. Dr. Ippolito, the consultative examiner, opined that "[Plaintiff] can appropriately deal with stress with marked limitations." Tr. 268.

LMHC Scanlon and Dr. Ippolito were not treating physicians whose opinions were entitled to deference. *See* 20 C.F.R. § 416.927; *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). As mentioned above, Dr. Ippolito was a consultative examiner and, under the regulations, LMHC Scanlon was not an "acceptable medical source." *See* 20 C.F.R. § 416.913(a); *Bulavinetz v. Astrue*, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009); *see also Esteves v. Barnhart*, 492 F. Supp. 2d 275, 281-82 (W.D.N.Y. 2007) (holding that an ALJ is not obligated to weigh the opinion of a mental health counselor when determining whether a claimant is disabled). The ALJ assigned LMHC Scanlon's opinion "less weight" because it was not only inconsistent with itself but also with the other evidence and opinions in the record. Tr. 23. The ALJ afforded the portion of Dr. Ippolito's opinion regarding Plaintiff's stress "less weight" because medical consultant R. Chahal, M.D., reviewed Dr. Ippolito's findings and the post-assessment record and opined that Plaintiff only had "moderate" limitations. Tr. 22-23. Weighing Dr. Ippolito's and Dr. Chahal's opinions was a task wholly within the province of the ALJ. *See Venio v. Barnhart*,

312 F.2d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the commissioner to resolve."); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.").  Thus, the ALJ was allowed to accept the limitations opined by Dr. Chahal over those by Dr. Ippolito and LMHC Scanlon when considering the impact Plaintiff's stress would have on her RFC.

The ALJ also adequately made "specific findings about the nature of [Plaintiff's] stress, the circumstances that trigger[ed] it, and how those factors affect[ed] [her] ability to work." *Stadler*, 464 F. Supp. 2d at 188-89.  The ALJ stated that he accounted for Plaintiff's "report of social interaction as a trigger of symptoms" by limiting her to simple tasks and limiting her interactions with others. Tr. 21.  In fact, all the limitations in Plaintiff's RFC are designed to account for her difficulty in handling stress.  *See* Tr. 20; *see also Herb*, 366 F. Supp. 3d at 447-48 (finding that a "not so generous" RFC did not adequately account for the plaintiff's stress he was not limited to simple work or routine tasks and was required to "frequently" interact with co-workers and supervisors).  As such, Plaintiff's third argument fails.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's motion for judgment on the pleadings (Dkt. 16) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 14).  The Clerk of the Court will close this case.

SO ORDERED.

Dated:        December 14, 2022
              Buffalo, New York

                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE